## DAVE STEPHENS v. THE STATE.

1. CRIMINAL LAW. *Cruelty to animals. Section 2918, Code of 1880, construed. Case in judgment.*

   S. was indicted for killing a hog, under Section 2918, Code of 1880, which makes it a misdemeanor for any person to " cruelly beat, abuse, starve, torture or purposely injure any horse, ox or other animal belonging to himself or another." On the trial there was evidence which tended to show that S. shot and killed certain hogs while depredating on his crop. The defendant asked the court to instruct the jury that they should find him not guilty, if they believed that he killed the hogs while depredating on his crop and to protect it, and not out of a spirit of cruelty to the animals. The court refused such instruction. *Held*, that this was error. If the defendant was not actuated by a spirit of cruelty, or a disposition to inflict unnecessary pain and suffering, he was not guilty under the statute.

2. SAME. *Cruelty to animals. Intent and purpose.*

   It is immaterial in such case, whether the accused had a lawful fence, or whether the hogs killed were his property or that of another, or whether he is liable in a civil suit for a trespass. His guilt or innocence is determinable by the intent and purpose which prompted his act.

APPEAL from the Circuit Court of Yalobusha County.

HON. W. S. FEATHERSTON, Judge.

Dave Stephens was indicted under Section 2918, Code of 1880, for that he " unlawfully did cruelly beat, starve, torture and purposely injure " a certain hog, the property of one John Railly.

The evidence tended to show that several hogs were trespassing on the crop of the defendant; that he tried to get them out of his field, but failed; and that he thereupon shot and killed four of them, two of which belonged to the defendant and two to Railly.

The defendant offered to prove that he had a lawful fence, and that Railly's hogs were fence-breakers, and could not be barred by a lawful fence; but the court would not admit the evidence offered.

The court below refused the following instruction, asked by the defendant:

" The court instructs the jury that if they believe from the evidence that the defendant killed one or more of the hogs of Railly by shooting them, and did not cruelly beat, abuse, starve, torture or purposely injure said hogs, but killed them in the manner stated above, then the jury should find for the defendant, if they should believe from the evidence that the defendant killed them in order to save his crop."·

The defendant was convicted. He appealed from the judgment of the court.

*W. S. Chapman*, for the appellant.

The court below seemed to think that, if animals were trespassing in the field of a person who had a lawful fence, the law gave him a right to catch and impound them and receive pay for taking them up and caring for them; if he could not catch them and impound them or get them out, that he had no right to protect his property by killing such animal; and if he killed it so trespassing, the law implied that he killed in a cruel manner.

Would it not be just to let the jury determine from the facts the question whether defendant killed the hog of Railly in a cruel manner; or, having learned how and why he killed it, whether it was cruelty to animals or not?

*T. M. Miller*, Attorney-General, for the State.

Sec. 2918, Code of 1880, makes it a crime to cruelly torture or purposely injure any animal. The sole question seems to be here, then, whether the purpose or motive of defendant was to inflict torture on the animals and to purposely injure them. This motive is shown by the act of the party in shooting the animals when he ought to have impounded them.

ARNOLD, J., delivered the opinion of the Court.

Section 2918 of the Code, under which appellant was indicted, renders it a criminal offence for any person to cruelly beat, abuse, starve, torture or purposely injure certain animals, whether they belong to himself or another. This statute is for the benefit of animals, as creatures capable of feeling and suffering, and it was intended to protect them from cruelty, without reference to their being property, or to the damages which might thereby be occasioned to their owners.

It was error for the court below to refuse to instruct the jury for appellant to the effect that they should find him not guilty, if they believed from the evidence that he killed the hogs while they were depredating on his crop, and to protect it from destruction, and not out of a spirit of cruelty to the animals.

Such instruction was applicable to the evidence and expounded the law correctly. It was immaterial whether appellant had a lawful fence or not. The motive with which the act was done is the test as to whether it was criminal or not. Unless appellant was actuated by a spirit of cruelty, or a disposition to inflict unnecessary pain and suffering on animals, he was not guilty of the offence charged. He may have committed a trespass for which he is liable in a civil suit, but if his purpose and intent was to protect his crop from depredation, he did not violate the statute under which he was indicted. 1 Bish. Stat. Cr. Sec. 594, 597 a. *Wright* v. *The State*, 30 Ga., 325; *State* v. *Waters*, 6 Jones, L. 276; *Thomas* v. *The State*, 30 Ark., 433; *Lott* v. *The State*, 9 Tex., Ap. 206.

This disposes of the case at bar, but speaking for myself, I wish to say, that laws and the enforcement or observance of laws for the protection of dumb brutes from cruelty are, in my judgment, among the best evidences of the justice and benevolence of men. Such statutes were not intended to interfere, and do not interfere, with the necessary discipline and government of such animals, or place any unreasonable restriction on their use or the enjoyment to be derived from their possession. The common law recognized no right in such animals, and punished no cruelty to them, except in so far as it affected the right of individuals to such property. Such statutes remedy this defect, and exhibit the spirit of that Divine law, which is so mindful of dumb brutes as to teach and command not to muzzle the ox when he treadeth out the corn—not to plough with an ox and an ass together—not take the bird that sitteth on its young, or its eggs, and not to seethe a kid in its mother's milk.

To disregard the rights and feelings of equals is unjust and ungenerous, but to wilfully or wantonly injure or oppress the weak and helpless is mean and cowardly. Human beings have at least some means of protecting themselves against the

inhumanity of man—that inhumanity which "makes countless thousands mourn," but dumb brutes have none. Cruelty to them manifests a vicious and degraded nature, and it tends inevitably to cruelty to men.

Animals whose lives are devoted to our use and pleasure, and which are capable, perhaps, of feeling as great physical pain or pleasure as ourselves, deserve for these considerations alone, kindly treatment. The dominion of man over them, if not a moral trust, has a better significance than the development of malignaht passions and cruel instincts. Often their beauty, gentleness and fidelity suggest the reflection, that it may have been one of the purposes of their creation and subordination to enlarge the sympathies and expand the better feelings of our race. But, however this may be, human beings should be kind and just to dumb brutes, if for no other reason than to learn how to be kind and just to each other.

*The judgment is reversed and the cause remanded.*