90 P.3d 781

**JOHN C., Petitioner,**

v.

**The Honorable William P. SARGEANT, III, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,**

**Arizona Department of Economic Security; Darryn C., Real Parties in Interest.**

**No. 1 CA–SA 04–0051.**

Court of Appeals of Arizona, Division 1, Department C.

May 20, 2004.

David J. Drexler, Attorney at Law, By David J. Drexler, Scottsdale, Attorney for Petitioner.

Terry Goddard, Attorney General, By Judy A. Sheirbon, Assistant Attorney General, Phoenix, Attorneys for Real Party in Interest ADES.

Kathleen M. Mucerino, Peoria, Guardian Ad Litem for Darryn C.

## OPINION

SNOW, Judge.

¶ 1 John C. petitions for special action relief from a trial court order requiring his counsel to certify that John C. will personally appear at the scheduled severance proceeding in order to assert his right to a jury trial on the severance petition. By previous order we accepted jurisdiction over the petition for special action and granted relief, indicating that this opinion would follow.

1. According to ADES, John C. was convicted of being a felon in possession of a firearm and sentenced to seventy months in federal prison. His projected release date is June 10, 2007.

2. While both transportation orders issued by the trial court here require the Maricopa County Sheriff's Office to transport John C. to the trial,

## FACTS AND PROCEDURAL HISTORY

¶ 2 John C. is currently incarcerated in a local federal prison.[1] In September 2003, ADES filed a motion to terminate his parental rights to his daughter Darryn C., basing the petition on Arizona Revised Statutes ("A.R.S.") section 8–533(B)(4) (Supp.2003). This section allows termination of the parent-child relationship when termination is in the child's best interests and "the parent is deprived of civil liberties due to the conviction of a felony ... if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. §§ 8–533(B), (B)(4).

¶ 3 John C. contested the termination of his parental rights to Darryn C., and a contested severance hearing to the court was set for January 8, 2004. The trial court also issued an order requiring the Maricopa County Sheriff's Office to transport John C. from the federal prison to the severance proceeding.[2]

¶ 4 Between the issuance of these orders and the hearing date, A.R.S. § 8–223 went into effect. 2003 Ariz. Sess. Laws, ch. 6, § 3 (stating that the effective date of added § 8–223 is December 18, 2003). That statute, passed by the state legislature in 2003, requires that "[a] hearing to terminate parental rights ... shall be tried to a jury if a jury is requested by a parent, guardian or custodian whose rights are sought to be terminated."

¶ 5 On January 8, John C. was not transported to the scheduled hearing. The court then set a status conference for January 22, 2004; John C. appeared telephonically at that hearing and requested a jury proceeding pursuant to the new law. John C. also wanted to represent himself with the newly appointed counsel acting as advisory counsel, but the trial court informed him that he must appear in person to represent himself. His

the record before us is unclear whether the federal authorities declined to transport John C. to the trial or refused to allow his transportation by the sheriff. In any case, both parties concede that the superior court has no jurisdiction to issue orders to the Federal Bureau of Prisons.

counsel informed the court that he and John C. believed that the federal authorities would not allow John C. to be transported to the trial. The assistant attorney general suggested allowing more time between issuance of the transport order and the trial date so the federal authorities had adequate notice of the need for transportation.

¶ 6 John C.'s counsel responded that he was "not going to make any efforts to have [John C.] transported. [John C.] does not want to be transported to the trial.... He wants to appear telephonically for the trial. And I—and that's the way I would ask the Court that we do it, if the Court would permit it along with the jury trial, and that we would just—we'll go from there." The State objected, arguing that "if the jury is here, I think the jury needs to see him to assess his credibility and lay eyes on him.... I think it is unfair to the jury to have him appear by phone to have him, to have him be Bosley or whatever on the phone." The court agreed with the State, stating that "for a jury not to be able to see the father I think is a fundamental thing.... [F]irst of all, ... it's going to be extremely prejudicial to him; and secondly, it's going to deprive them of the opportunity of seeing him."

¶ 7 John C.'s counsel responded that John C. "has a right to a jury trial. There is no way to get him here. The federal prison will not transport him to court. They don't do that." The court eventually ruled that John C. could have a jury consider the severance action only if his counsel guaranteed the court five days prior to the hearing that John C. would personally appear at the hearing. The severance proceeding was then set for April 12, 2004, with a pretrial conference set on April 6, 2004. The court informed John C.'s counsel that he would expect the certificate regarding John C.'s appearance at the April 6 conference. Following the court's ruling, John C. filed this petition for special action.

## DISCUSSION

### A. JURISDICTION

¶ 8 A petition for special action is the appropriate method to challenge the denial of a jury trial. *Campbell v. Superior Court,* 186 Ariz. 526, 527, 924 P.2d 1045, 1046 (App.1996) ("Special action review is an appropriate means to determine whether there is a right to a jury trial."); *see also Raye v. Jones,* 206 Ariz. 189, 190, ¶ 3, 76 P.3d 863, 864 (App.2003) (special action holding that there is no right to a jury trial on the offense of underage drinking and driving); *Benitez v. Dunevant,* 194 Ariz. 224, 225, ¶ 4, 979 P.2d 1017, 1018 (App.1998) (special action holding that there is no right to a jury trial on the offense of drinking and driving on a suspended license). In addition, jurisdiction is appropriate because this petition raises an issue of first impression and of statewide importance. *See Martin v. Reinstein,* 195 Ariz. 293, 300–01, ¶ 10, 987 P.2d 779, 786–87 (App.1999) (accepting jurisdiction over petition challenging confinement pursuant to Arizona's Sexually Violent Persons Act).

### B. MERITS

¶ 9 In his petition, John C. argues that the trial court cannot deny him a jury trial if he is prevented from personally appearing at the severance trial by his incarceration in federal prison. ADES responds that the trial court properly exercised its discretion by conditioning John C.'s right to a jury trial on his personal appearance. We disagree with ADES.

¶ 10 "Our primary goal in interpreting statutes is to discern and give effect to legislative intent." *Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, 529, ¶ 8, 19 P.3d 1241, 1245 (App.2001). The statute in question here, A.R.S. § 8–223, states: "A hearing to terminate parental rights ... *shall* be tried to a jury if a jury is requested by a parent, guardian or custodian whose rights are sought to be terminated." (Emphasis added.) The use of the word "shall" in this statute is mandatory. *See HCZ Const., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶ 11, 18 P.3d 155, 158 (App.2001) ("The ordinary meaning of 'shall' in a statute is to impose a mandatory provision." (citations omitted)).

¶ 11 While the right to a jury in a severance trial is statutory rather than constitu-

tional, it is an important right. *Rothweiler v. Superior Court,* 100 Ariz. 37, 47, 410 P.2d 479, 486 (1966) ("The right to a jury trial should be jealously guarded and preserved by the courts, whether granted by the constitution or statutes."). However, like its constitutional counterpart, a statutory right to a jury trial can be waived. *See, e.g., Mason v. Cansino,* 195 Ariz. 465, 466, ¶ 4, 990 P.2d 666, 667 (App.1999) ("[T]he right to a jury trial in civil cases is presumptively waived unless at least one litigant demands a jury trial."); *Johnson v. Mofford,* 193 Ariz. 540, 547, ¶ 36, 975 P.2d 130, 137 (App.1998) ("The right to a jury trial is waived by failing to object to a proceeding without a jury and failing to request a jury.").

¶ 12 The Arizona Supreme Court amended the Arizona Rules of Procedure for the Juvenile Court in response to the new statute and clarified what actions may constitute waiver of the right to trial by jury in a severance proceeding. In relevant part, the rule states:

If the court finds the parent ... failed to appear at the termination adjudication hearing without good cause shown, had notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent ... and that failure to appear may constitute a waiver of rights, including the right to a trial to a jury, and an admission to the allegation contained in the motion or petition for termination, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights.

Ariz. R.P. Juv. Ct. 66(D)(2); *see also* Ariz. R.P. Juv. Ct. 66.1(B) ("Failure to appear at the initial termination hearing or the termination adjudication hearing shall be deemed a recission of any request for a trial to a jury."). Accordingly, if the parent does not appear at the hearing and has no good cause for failing to appear, the right to a jury trial may be waived.

¶ 13 While a finding of good cause for a failure to appear is largely discretionary,

*Ugalde v. Burke,* 204 Ariz. 455, 458, ¶ 10, 65 P.3d 103, 106 (App.2003) ("Whether the facts of a particular case establish 'good cause' is a matter left to the sound discretion of the trial court."), the juvenile court rule finding waiver absent good cause cannot be read to eviscerate the statutory right to a jury trial. *See Graf v. Whitaker,* 192 Ariz. 403, 407, ¶ 14, 966 P.2d 1007, 1011 (App.1998) ("We must ... 'avoid construction of statutes which would render them meaningless or of no effect.' " (citation omitted)); *State v. Medrano–Barraza,* 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997) (presuming that legislature "did not intend an absurd result and our construction must avoid such a consequence").

¶ 14 Neither party here presents any case law addressing whether incarceration in another jurisdiction may constitute good cause for a failure to appear; however, existing Arizona case law demonstrates that incarceration may constitute good cause. For example, in *State v. Bonds,* 201 Ariz. 203, 205, ¶ 10, 33 P.3d 537, 539 (App.2001), this court reviewed an order forfeiting a defendant's bond for failure to appear. We held that while "the later incarceration of [a] defendant in another jurisdiction after release on bond on an Arizona case is not reasonable cause for failure to appear," incarceration in another jurisdiction for a crime committed before the release on bond could constitute good cause when the incarceration was the expected outcome of the defendant's release. *Id.* at 205–07, ¶¶ 10–16, 33 P.3d at 539–41; *see also State v. Rocha,* 117 Ariz. 294, 297, 572 P.2d 122, 125 (App.1977) (stating that a defendant's failure to surrender to state authorities following the denial of his petition for review of his conviction was not excusable because he was in federal custody for a crime committed while his state court conviction was on appeal).

¶ 15 In this case John C. was already in federal custody when the severance petition was filed and most importantly, the basis for the severance petition is in fact John C.'s incarceration. Neither party suggests that the state court has the ability to compel federal authorities to transport John C. to state court for his severance trial or to allow his transportation by state authorities.

Thus, if John C. fails to appear at the severance trial because federal authorities decline to transport him or permit his transportation there, he has shown good cause for his involuntary non-appearance.

¶ 16 If we were to decide otherwise, a parent's incarceration in a jurisdiction beyond the control of Arizona courts would waive that parent's right to a jury trial whenever ADES chose to petition for termination of parental rights due to incarceration. Such an interpretation would not give effect to the statutory requirement that requesting parents receive a jury trial. *See Graf,* 192 Ariz. at 407, ¶ 14, 966 P.2d at 1011; *Medrano–Barraza,* 190 Ariz. at 474, 949 P.2d at 563. Thus, in such an instance, the parent has established good cause for his failure to appear. This good cause prevents the court from finding a parental waiver of the statutory right to a jury proceeding.

¶ 17 However, while the federal authorities' refusal to make John C. available for the severance proceeding may establish good cause sufficient to prevent waiver of his statutory right to a jury proceeding, that does not mean that the proceeding must wait until he can be physically present. The best interests of the dependent child require a prompt determination of whether John C.'s parental rights will be terminated. Thus, a proceeding before a jury may proceed in his absence, or, if he is permitted by federal authorities to appear telephonically, the hearing may proceed with John C.'s telephonic participation. Contrary to the ruling of the trial court, a telephonic appearance is an acceptable alternative to personal appearance when personal appearance is prevented by incarceration. *State v. Valentine,* 190 Ariz. 107, 110, 945 P.2d 828, 831 (App.1997) (stating that when a party to an action is incarcerated, "appearance by telephone is an appropriate alternative to personal appearance."); *see also* Ariz. R.P. Juv. Ct. 42 (providing for telephonic testimony or argument in a dependency hearing). Because federal authorities here will apparently allow John C. to appear for his severance proceeding telephonically, the trial court should provide John C. with a jury trial at which he telephonically appears.

¶ 18 Finally, based upon a comment made by John C.'s counsel during the pretrial hearing, ADES also contends that John C. is voluntarily waiving his right to a jury trial by stating that he did not want to be transported to the trial. John C. expressly refutes this contention in the special action proceedings before this court, stating that he desires to be present at the severance trial if the federal authorities will transport him or allow his transportation. Accordingly, we decline to address this issue.

## CONCLUSION

¶ 19 For the preceding reasons, we accept jurisdiction over John C.'s special action petition and grant relief, deciding that the trial court may not refuse John C.'s request for a jury trial if the state or federal authorities refuse to permit his transportation or participation in the severance proceeding. In such a case, John C. is nevertheless entitled to have a jury decide whether his parental rights will be severed.

CONCURRING: WILLIAM F. GARBARINO, Judge, and JOHN C. GEMMILL, Judge.